```
            IN THE UNITED STATES DISTRICT COURT FOR
          THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                 *
INSURANCE COMPANY OF NORTH
AMERICA a/s/o Tom Glaser,        *
Scott Merchant, Robert
Verklin, and Albert Patane       *

     Plaintiff,                  *
v.                                          CIVIL NO.: WDQ-04-440
                                 *
MARITIME SPECIALTIES LLC,
et al.,       *                  *

     Defendants.                 *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION AND ORDER

In this admiralty case, the Insurance Company of North America ("ICNA") has sued Maritime Specialties LLC, Q-Lube Marine Services, and Edgewater Boating Center for breach of contract and negligence.[1]  Pending are the Defendants' motion for a stay in favor of arbitration, the Defendants' motion for summary judgment, and the Plaintiff's motion for partial summary judgment.  For the reasons discussed below, the motion for a stay will be denied, the Defendants' motion for summary judgment will be granted in part and denied in part, and the Plaintiff's motion for partial summary judgment will be

---

[1] Tort and contract claims involving the storage of pleasure crafts are within the Court's admiralty jurisdiction. *Schuster v. Baltimore Boat Sales, Inc.*, 1980 AMC 789 (D. Md. 1980).

1

denied.

BACKGROUND

In February 2003, boats owned by Tom Glaser, Scott Merchant, Robert Verklin, and Albert Patane were stored in a boat shed owned by the Defendants in Edgewater, Maryland. From February 15 - 18, 2003, the state of Maryland experienced a record-breaking snowfall. Mogil Aff. at ¶ 5. The "President's Weekend Storm of 2003," blanketed Maryland with over 28 inches of snow; the heaviest snowstorm on record for the region since records began in 1870. *Id.* The snowstorm was followed by an unusually severe rainstorm on February 22, 2003. *Id.* (noting that the 2.30 inches of rain that fell that day was the third highest amount of rain recorded on a single day in February in the region's history).

On February 22, 2003, part of the boat shed's roof collapsed, causing damage to Glaser, Merchant, Verklin, and Patane's boats. Konkus Aff. at ¶ 8. The four boat owners filed claims with their hull and liability insurance underwriter, ICNA. ICNA paid their claims in accordance with the terms of their insurance policies and became subrogated to their rights.

In December 2003, ICNA submitted claims to the

2

Defendants' liability insurance underwriter, Great American Insurance Company ("Great American"). Having received no response from Great American, ICNA filed this suit on February 20, 2004.

ANALYSIS

A.  Motion to Stay Case in Favor of Arbitration

Great American and ICNA are parties to a Property Subrogation Arbitration Agreement sponsored by Arbitration Forums, Inc. Defs.' Ex. 1 (member listings); Defs.' Ex. 2 (member listings); Defs.' Ex. 3 (arbitration agreement). The Defendants assert that arbitration is mandatory under the arbitration agreement; thus the Court should stay this case and compel arbitration. ICNA counters that the Defendants have no standing to compel arbitration, as they did not sign the arbitration agreement.

Because arbitration is a matter of contract, normally one who is not party to an arbitration agreement lacks standing to compel arbitration. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000); *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993).

3

Non-signatories may be bound by arbitration agreements, however, under ordinary contract and agency principles. *Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001). Third party beneficiaries, for example, have rights under an arbitration agreement if the parties to the agreement intend to benefit third parties. *Britton*, 4 F.3d at 745. But an intent to benefit third parties is not presumed; the law requires a showing that the parties to the contract intended to benefit third parties. *U.A. Local 342 Apprenticeship & Training Trust v. Babcock & Wilcox Construction Co., Inc.*, 396 F.3d 1056, 1059 (9th Cir. 2005) (*citing Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 371 (1984)); *Britton*, 4 F.3d at 745. The Defendants assert that they are third party beneficiaries of the arbitration agreement, but have not produced evidence that the parties to the arbitration agreement intended to benefit them. The Defendants, therefore, lack standing to compel arbitration.

B.   Motions for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court

explained that, in considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment.  *Anderson*, 477 U.S. at 252.

1.  Subrogated Claims of Tom Glaser, Robert Verklin, and Albert Patane

ICNA argues that Tom Glaser, Robert Verklin, and Albert Patane had a bailment relationship with the Defendants.

5

> A bailment relationship is a contractual relationship which may arise from an express or implied agreement. A bailment is the delivery of goods by their owner (the bailor) to another (the bailee) for a specific purpose, and acceptance of those goods by the other, with the express or implied promise that the goods will be returned after the purpose of delivery has been fulfilled. When a vessel is placed at a wharf or marina for storage and repairs, bailment results for the mutual benefit of the vessel owner and the operator of the marina.

*Reel Therapy Charters, Inc. v. Marina Mgmt., Inc.*, 2004 AMC 378 387-88 (N.D. Fl. 2003). The bailee's duties are governed by the terms of the agreement. *Id.* at 388. In the absence of terms which limit the bailee's liability or impose a higher standard of care, a bailee is responsible for exercising reasonable care with respect to the vessel entrusted to him. *Id.* Should the bailee fail to exercise reasonable care, the bailee will be liable to the bailor for any resulting injury or loss of the bailed property. *Id.*[2]

The Defendants contend that they had no bailment relationship with the boat owners because the Defendants did not have exclusive possession of the boats. An admiralty bailment does not arise unless the delivery to the bailee is

---

[2] An action based on a bailment can be raised either as a breach of contract claim which incorporates a bailee's implied duty of reasonable care with respect to the property while in its custody, or in simple negligence. *Reel Therapy Charters*, 2004 AMC at 388.

6

complete and he has exclusive right to possession of the bailed property, even as against the owner. *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 1984 AMC 1341 (5th Cir. 1983).

It is true that the boat owners had access to their boats while they were stored at the shed. But this Court has held that a boat storage contract creates a bailment relationship even when a boat owner has access to the vessel, provided the vessel was in the marina's exclusive control at the time of the accident. *See Hicks v. Tolchester Marina, Inc.*, 1984 AMC 2027 (D. Md. 1983). There is no evidence that any of the boat owners were present at the marina after the snowstorm or on the day the roof collapsed. The Defendants, therefore, had exclusive control over the vessels at the time of the accident, and ordinary bailment principles apply. *See id.*

In the law of bailments, a prima facie presumption of negligence on the part of the bailee arises from the bailor's proof that the bailed article was delivered in good condition and was returned damaged, or not returned at all. *Richmond Sand & Gravel Corp. v. Tidewater Const. Corp.*, 170 F.3d 392, 393 (4th Cir. 1948). It is uncontraverted that the boats were severely damaged when returned to the bailors.

The burden of proof then shifts to the bailee, who may

rebut the presumption of negligence by showing that either the damage was in no way attributable to its negligence, or that it exercised the requisite care so that, regardless of how the accident transpired, it could not have been caused by any negligence on its part.  *Id.; Royal Ins. Co. of Am. v. Long Beach Marine Land*, 1989 AMC 2090 (S.D.N.Y. 1988).  The burden of proof, however, remains with the bailor.  *Id.*  Thus, if the bailee rebuts the bailor's prima facie case, the bailor must prove the bailee's negligence and that such negligence was the proximate cause of the property damage.  *Id.*

     The Defendants assert that they are not liable for the damage to the boats because the damages were caused by an "Act of God."  The "Act of God" defense shields bailee's from liability for accidents caused "directly and exclusively [by] natural causes without human intervention," which no reasonable amount of "foresight, pains, or care . . . could have been prevented."  *Skandia Ins. Co., Ltd. v. Star Shipping AS*, 2001 AMC 1527, 1536 (S.D. Ala. 2001).

     The Defendants have established, through expert meteorological testimony, that the President's Weekend Storm of 2003 was unusually severe.  In addition to the substantial amount of snowfall, the liquid water content of the snow was unusually high, increasing the weight of snow accumulations.

*See* Mogil Aff. at ¶ 5. In the few days after the snowstorm, there was limited snow melt and a great deal of compaction and settling. *Id.* at ¶ 6. The unusually severe rainstorm of February 22, 2003, added about an additional inch of water to the accumulated snow. *Id.*

Here, there is a question of fact as to whether the storms constituted an "Act of God" that would relieve the Defendants of liability. Although the two storms, individually, were quite severe, several days passed between the end of the snowstorm and the beginning of the rainstorm. A reasonable jury could conclude that the threat of additional snow or rain in the region was sufficient to put the Defendants on notice that the accumulated snow needed to be removed from the roof of the boat shed after the initial snowstorm. Alternatively, a reasonable jury could determine that the close temporal proximity of the unusually severe snowstorm and rainstorm caused the accumulated snow to be unpredictably heavy, such that the Defendants could not have appreciated the risk of waiting for the snow to melt rather than removing it.

Because a question of fact exists as to whether the storms constitute an "Act of God," the parties' motions for summary judgment on the subrogated claims of Tom Glaser, Robert Verklin, and Albert Patane will be denied.

2.   Subrogated Claims of Scott Merchant

ICNA claims that Scott Merchant also shared a bailment relationship with the Defendants.  Scott Merchant's boat, however, was placed in the boat shed without the Defendants' permission.  Konkus Aff. at ¶ 11.  After the boat appeared in the shed, the Defendants learned that Merchant's yacht broker, Bay Sports Brokerage, had placed the boat in the shed.  *Id.*  The Defendants sent Merchant a storage agreement and invoice for storage, which Merchant never returned.  *Id.*  As Merchant refused contact for storage of his vessel, a bailment relationship never existed.  *Georgetown Yacht Basin, Inc. v. Yacht Centerline*, No. S-92-2133, slip op. at 3 (D. Md. July 6, 1994).

Merchant, therefore, was either a trespasser or bare licensee on the Defendants' property.  The only duty of care owed to trespassers and bare licensees is to refrain from willfully or wantonly injuring them.  *Bramble v. Thompson*, 264 Md. 518, 521-22 (1972).  Because ICNA has offered no evidence to show that the Defendants willfully or wantonly injured Merchant, the Defendants' motion for summary judgment will be granted with respect to Merchant's subrogated negligence claim, and ICNA's motion will be denied.  Moreover, as ICNA has not adduced evidence of a contractual relationship between Merchant

and the Defendants, the Defendants' motion for summary judgment will be granted with respect to Merchant's subrogated breach of contract claim, and ICNA's motion will be denied.

## CONCLUSION

For the reasons discussed above, the Defendants' motion to stay this case and compel arbitration will be denied, the Plaintiff's motion for summary judgment will be denied, and the Defendants' motion for summary judgment will be granted in part and denied in part.

| | |
|---|---|
| _June 21, 2005_ | _____/s/_____ |
| Date | William D. Quarles, Jr.<br>United States District Judge |